The Honorable Jimmy Jeffress State Senator Post Office Box 904 Crossett, AR 71635-0904
Dear Senator Jeffress:
I am writing in response to your request for my opinion on the following questions relating to isolated schools:
 1. Considering current law and the effective date of Act 1397 of 2005, is it possible for a local school board of directors to close an isolated school or parts thereof prior to August 12, 2005?
 2. If the answer to Question 1 is in the affirmative, what type of local board action, if any, is required in order for a school district to be deemed to have" closed" an isolated school or part thereof for purposes of Act 1452?
 3. Can the McGehee School District reutilize the grade 7-12 grade span that was not utilized at the Arkansas City campus during the 2004-05 school year and, thus, be entitled to Isolated Funding for students attending those reutilized grade spans for that isolated school?
 4. For the purpose of Isolated Funding pursuant to A.C.A. 6-20-602 and Act 1452, does the term "average daily membership" include only those students that reside within the isolated school area (i.e., the former Arkansas City School District boundary lines) or does the term also include any students from other areas of the McGehee School District that are assigned to the Arkansas City school campus for any particular grade or special educational program?
 5. Is the Arkansas City isolated school area entitled to receive Isolated Funding for students attending a special needs program such as an ALE program or is the school only entitled to per student isolated funding for students attending traditional K-12 grades at Arkansas City?
 6. For purposes of special needs funding pursuant to Act 1452, are school districts required to show full compliance with the Arkansas Standards of Accreditation (see 6-15-202) as required in 6-20-601(b)(3)?
RESPONSE
In my opinion, although the law on this question is not entirely clear, see A.C.A. §§ 6-20-602(b) and 6-13-1603(f), the answer to your first question is, in all likelihood, "no." Your second question is consequently moot. With respect to your third question, I believe that if the McGehee School District reopens grades 7-12 at the Arkansas City campus and continues to meet the criteria for isolated-school status, it will be entitled to include the additional students in average daily membership computations for the purpose of determining isolated school funding. However, it may do so only in the year following the expansion of service. See A.C.A. § 6-20-603(b). With respect to your fourth question, I believe the term "average daily membership" refers to any students formally registered in grades K-12, irrespective of where they reside. See A.C.A. § 6-13-1601. With respect to your fifth question, I believe that so long as a student enrolled in a special-needs program is also classified as enrolled in any one of grades K-12, the isolated school area may include that student in average daily membership for purposes of computing both isolated funding and special-needs funding. I consider it immaterial whether the student's education is characterized as "traditional" or "nontraditional." In my opinion, the answer to your sixth question is "yes." See A.C.A. § 6-20-601(b)(3) and Acts 2005, No. 1452.
Question 1: Considering current law and the effective date of Act 1397 of2005, is it possible for a local school board of directors to close anisolated school or parts thereof prior to August 12, 2005?
In my opinion, the answer to this question is, in all likelihood, "no," although the law on this question is unclear.
Section 6-20-602 of the Code (West Supp. 2005), which was enacted pursuant to Acts 2003, No. 60, § 5, provides in pertinent part:
(a) "Isolated school" means a school within a school district that:
 (1) Prior to administrative consolidation or annexation under this section, § 6-13-1601 et seq., and § 6-13-1405(a)(5) qualified as an isolated school district under § 6-20-601; and
 (2) Is subject to administrative consolidation or annexation under this section, § 6-13-1601 et seq., and § 6-13-1405(a)(5).
 (b) Any isolated school within a resulting or receiving district shall remain open.
(Emphasis added.)
In Acts 2005, No. 1397, § 2, the legislature amended the highlighted subsection (b) of this statute to read as follows:
 Any isolated school within a resulting or receiving district shall remain open, unless the school board of the resulting or receiving district adopts a motion to close the isolated school or parts thereof. . . .
(Emphasis added.) As you indirectly acknowledge in your question, Act 1397 will not take effect until August 12, 2005.[1] Read alone, then, A.C.A. § 6-20-602(b) would appear to prohibit closing any isolated school before August 12, 2005.
However, current law contains other pertinent legislation applicable to all schools, including isolated schools, that appears at odds with the blanket prohibition against closing isolated schools set forth in A.C.A. § 6-20-602(b). Subsection 6-13-1603(f) (West Supp. 2005), which like A.C.A. § 6-20-602(b) was enacted pursuant to Act 60 of 2003, provides:
 No school facility in a school district included in the consolidation list required by § 6-13-1602 shall be closed by the state board or a local school board until after completion of an assessment of public school facilities by the Joint Committee on Educational Facilities as required by Act 1181 of 2003, but in no event shall any be closed prior to June 1, 2005.
Section 1 of Act 1397 of 2005 repeals this statute, but, as noted above, Act 1397 will not take effect until August 12, 2005. Accordingly, the statute just quoted, like A.C.A. § 6-20-602(b), which prohibits any closure of isolated schools within a resulting or receiving district, is still in effect. Given that June 1, 2005 has passed and that the Joint Committee on Educational Facilities has completed its assessment of school facilities, A.C.A. § 6-13-1603 would thus appear to authorize any school board, in the proper exercise of its discretion,[2] to close any school it chooses in a district that has been subject to an annexation or consolidation. In my opinion, this statute conflicts with A.C.A. §6-20-602(b), which was likewise enacted pursuant to Act 60 of 2003.
In determining how to address the tension between these two current statutes, I am guided by several principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765, 68 S.W.3d 289, 292
(2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161, 987 S.W.2d 686
(1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v.State, 347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis,335 Ark. 188, 979 S.W.2d 894 (1998). In addition, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State,315 Ark. 1, 864 S.W.2d 859 (1993); City of Fort Smith v. Tate,311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together."Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly. Uilkie v. State, 309 Ark. 48, 827 S.W.2d 131(1992); Love v.Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other.Donoho, 318 Ark. 637; Ward School Bus Mfg., Inc. v. Fowler,261 Ark. 100, 547 S.W.2d 394 (1977).
Moreover, a general statute normally does not apply where there is a specific statute governing a particular subject matter. Donoho v. Donoho,318 Ark. 637, 887 S.W.2d 290 (1994). Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of Fort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980). This rule also applies to conflicting acts passed in the same legislative session, Sargent v. Cole, 269 Ark. 121, 598 S.W.2d 749 (1980), although, in such a case, the ordinary presumption that the legislature did not intend a repeal by implication is strengthened. Merchants' Transfer Warehouse Co. v. Gates, 180 Ark. 96, 21 S.W.2d 406 (1929). With respect to such acts, A.C.A. § 1-2-207(b) provides:
 When more than one (1) act concerning the same subject matter is enacted by the General Assembly during the same session, whether or not specifically amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The last enactment is the one which the Governor signed last.
The presumption, then, is that two acts passed during the same session that address the same subject were actuated by the same policy and that both were intended to be given effect. See Sutherland on StatutoryConstruction, § 23.17 (5th Ed., 1993); Adams v. Arthur,969 S.W.2d 598, 333 Ark. 53 (1998); Horn v. White, 225 Ark. 540,284 S.W.2d 122 (1955). However, the Arkansas Supreme Court has held that this rule must yield if doing so is necessary in order to effectuate legislative intent. Horn, supra. Moreover, the court has held that if two acts that are passed at the same legislative session contain conflicting clauses, the whole record of legislation will be examined to ascertain the legislative intent, and such intent, if ascertained, will be given effect, regardless of priority of enactment. Id.
I am initially struck by the fact that all isolated schools comprise a subset of schools subject to annexation or consolidation. See the definition set forth at A.C.A. § 6-20-602(a). It follows that both A.C.A. § 6-20-602(b) and A.C.A. § 6-13-1603(f) apply to isolated schools, creating what I consider an irreconcilable tension between the two with respect to the question of whether an isolated school might be closed before August 12, 2005. I must accordingly apply the principles of statutory construction set forth above in an effort to determine which of these currently applicable statutory provisions will control.
Priority of legislation is not an issue in resolving this tension, since, as noted above, both statutes were enacted not only in the same legislative session, but pursuant to the same act. Acts 2003, No. 60. However, I consider it dispositive that A.C.A. § 6-13-1603(f) deals only generally with the whole category of schools that have been administratively annexed or consolidated, whereas A.C.A. § 6-20-602(b) deals specifically with annexed or consolidated schools that further qualify as "isolated." Applying the principle that a more specific statute will control over a more general statute in the event of a conflict, I believe A.C.A. § 6-20-602(b) should be given effect in this instance, leading to the conclusion that a school district board may not close an isolated school before August 12, 2005.
Question 2: If the answer to Question 1 is in the affirmative, what typeof local board action, if any, is required in order for a school districtto be deemed to have "closed" an isolated school or part thereof forpurposes of Act 1452?
This question is moot in light of my response to your first question.
Question 3: Can the McGehee School District reutilize the grade 7-12grade span that was not utilized at the Arkansas City campus during the2004-05 school year and, thus, be entitled to Isolated Funding forstudents attending those reutilized grade spans for that isolatedschool?
In my opinion, in the second year following the change described in your question, the former Arkansas City School District will be eligible for isolated funding based upon its entire student population, including students in the "reutilized" grades 7-12, if it meets the following criteria, which are set forth at A.C.A. § 6-20-601 (Supp. 2003):
 (a) As used in this section, "isolated school district" means a school district that meets any four (4) of the following five (5) criteria:
 (1) There is a distance of twelve (12) miles or more by hard-surfaced highway from the high school of the district to the nearest adjacent high school in an adjoining district;
 (2) The density ratio of transported students is less than three (3) students per square mile of area;
 (3) The total area of the district is ninety-five square miles (95 sq. mi.) or greater;
 (4) Less than fifty percent (50%) of bus route miles is on hard-surfaced roads; and
 (5) There are geographic barriers such as lakes, rivers, and mountain ranges which would impede travel to schools that otherwise would be appropriate for consolidation, cooperative programs, and shared services.
With regard to the question of a district's entitlement to isolated funding, the statute further provides:
 (b) An isolated school district shall be eligible to receive isolated funding if:
 (1) The district's budget is prepared by the local district with Department of Education approval;
 (2) The district has an average daily membership of less than three hundred fifty (350);[3] and
 (3) The district meets the minimum standards for accreditation of public schools prescribed by law and regulation.
 (c) Any school district designated as an isolated school district for the 1996-1997 fiscal year that used geographic barriers as one (1) of the four (4) criteria necessary to receive isolated funding shall be allowed to continue to use geographic barriers as a criterion for future allocations of isolated funding.
Section 6-20-602 of the Code (West Supp. 2005), which was enacted pursuant to Acts 2003, No. 60, § 5, provides in pertinent part:
(a) "Isolated school" means a school within a school district that:
 (1) Prior to administrative consolidation or annexation under this section, § 6-13-1601 et seq., and § 6-13-1405(a)(5) qualified as an isolated school district under § 6-20-601; and
 (2) Is subject to administrative consolidation or annexation under this section, § 6-13-1601 et seq., and § 6-13-1405(a)(5).
So long as the decision of the McGehee School District to "reutilize the grade 7-12 grade span that was not utilized at the Arkansas City campus during the 2004-05 school year" would not disqualify the campus as an isolated school under this standard, I believe it would remain eligible to receive isolated funding. In my opinion, if the district remained eligible following such a change, the average daily membership figure used to compute isolated funding pursuant to A.C.A. § 6-20-601(d) would include students in grades 7-12. However, assuming the district made this change in the 2005-06 school year, I do not believe the district's isolated funding would reflect the increased enrollment until the 2006-07 school year. I base this conclusion on the terms of A.C.A. § 6-20-603(b) (West Supp. 2005), which provides:
 Beginning with the 2004-2005 school year and each school year thereafter, state financial aid in the form of isolated funding shall be provided to school districts containing an isolated school area in an amount equal to the prior year three (3) quarter average daily membership of the isolated school area multiplied by the per student isolated funding amount for the isolated school areas as set forth under column "C" of subsection (a) of this section.
(Emphasis added.) As reflected in the highlighted term, the formula for computing isolated funding is based upon the prior year's enrollment.[4]
Accordingly, assuming the McGehee School District remained isolated after the change, it would not realize an increase in special needs funding until the 2006-07 school year.
Question 4: For the purpose of Isolated Funding pursuant to A.C.A.6-20-602 and Act 1452, does the term "average daily membership" includeonly those students that reside within the isolated school area (i.e.,the former Arkansas City School District boundary lines) or does the termalso include any students from other areas of the McGehee School Districtthat are assigned to the Arkansas City school campus for any particulargrade or special educational program?
The term "isolated school area" is defined indirectly at A.C.A. §6-20-603 (West Supp. 2005), which provides in pertinent part:
 (a) Upon the effective date of consolidation, annexation, or reorganization, the following school districts that received isolated funding in the 2003-2004 school year shall become isolated school areas for the sole purpose of receiving isolated funding and shall have a per student isolated funding amount as follows. . . .
Included among the former districts that now comprise "isolated school areas" is the former Arkansas City School District.
With respect to the "average daily membership" referenced in your question, A.C.A. § 6-13-1601 (West Supp. 2005) provides in pertinent part:
 (4)(A) "Average daily membership" means the total number of days attended plus the total number of days absent by students in grades kindergarten through twelve (K-12) during the first three (3) quarters of each school year divided by the number of school days actually taught in the district during that period of time rounded up to the nearest hundredth.
(B) Students who may be counted for average daily membership are:
 (i) Students who reside within the boundaries of the school district and who are enrolled in a public school operated by the district or a private school for special education students, with their attendance resulting from a written tuition agreement approved by the Department of Education;
 (ii) Legally transferred students living outside the district but attending a public school in the district; and
 (iii) Students who reside within the boundaries of the school district and who are enrolled in the Arkansas National Guard Youth Challenge Program, so long as the students are participants in the program[.]
This definition is repeated verbatim at Acts 2005, No. 2283, § 1, to be codified as A.C.A. § 6-20-2303(3)(A); A.C.A. §§ 6-20-1702; 6-20-2303; and 6-20-2403, all of which provide materially indistinguishable parameters for the students to be included in the computation of average daily membership.
Although the statute just quoted addresses the average daily membership of a "school district," as opposed to an "isolated school area," I nevertheless consider it instructive in that it quite logically directs that "attendance" be computed based upon the number of students actually served by the district, irrespective of where they might actually reside. Although the Code is silent on the issue, I believe logic dictates that average daily membership for purposes of computing funding for an isolated school area should likewise be figured based upon the number of students served by the Arkansas City school campus — i.e., the "isolated school area" — regardless of whether these students reside in the former Arkansas City School District or somewhere else within the McGehee School District. This conclusion is consistent with various other provisions of the Code allowing a nonresident student to be counted for purposes of tallying average daily membership. See, e.g., A.C.A. §§6-15-430 (allowing a district not classified as being in academic distress to receive and to count students from a district classified as being in academic distress); 6-18-205(a) (directing that designated students attending school outside the districts in which they reside should be counted in the districts where they attend); 6-18-206(e) ("For purposes of determining a school district's state equalization aid, the nonresident student shall be counted as a part of the average daily membership of the district to which the student has transferred."); and6-18-307(c) and -316(d) (both providing that a transferred child shall be counted in the district to which he has been transferred).
In my opinion, then, for purposes of determining isolates school funding provided to an isolated school area, officials may include in average daily membership any McGehee School District pupil served by the Arkansas City School. However, I must note that the Arkansas Code at no point directly declares as much. In large part, I am basing this conclusion on extrapolation from statutes addressing closely analogous situations, which I believe might serve as a barometer of legislative intent. Nevertheless, legislative clarification appears warranted.
Question 5: Is the Arkansas City isolated school area entitled to receiveIsolated Funding for students attending a special needs program such asan ALE program or is the school only entitled to per student isolatedfunding for students attending traditional K-12 grades at Arkansas City?
In my opinion, for the purpose of determining whether an isolated school area may include a student in average daily membership, it is immaterial whether the student is enrolled in a "traditional" or "nontraditional" K-12 program. So long as the student is classified as enrolled in a K-12 grade, under the circumstances described in your question, the school area will be independently entitled to receive isolated funding and special-needs funding.
Section 6-18-508 of the Code (Repl. 1999) provides in pertinent part:
 (a) Every school district shall establish an alternative learning environment which shall afford students an environment conducive to learning.
 (b) The alternative learning environment required by this section may be established by more than one (1) school district or may be operated by a public school educational cooperative established under § 6-13-901 et seq.
Section 6-18-509 (Repl. 199) further provides in pertinent part:
 (b) An Arkansas school district electing to operate an alternative class or school should provide for:
 (1) Student assessment either before or upon entry into the class or school; and
 (2) Intervention services designed to address the specific educational needs of individual students.
Sections 6-15-1801 through -1806 (West Supp. 2005) further establish the Arkansas Pygmalion Commission on Nontraditional Education to provide funding and standards for alternative education programs.
The fact that alternative learning environment funding and other special-needs funding comprise categories distinct from and additional to other categories of state funding is reflected in the following definition set forth at A.C.A. § 6-20-2303(1) (West Supp. 2005), as amended by Acts 2005, No. 2283, § 1:
 "Additional education categories" means state funds distributed to school districts for alternative learning environments, English language learners, national school lunch students, professional development, and technology[.]
(Emphasis added.) The highlighted term reflects the fact that special-needs funding categories are in addition to the "foundation funding" defined at A.C.A. § 6-20-2303(6). This conclusion is expressly stated at A.C.A. § 6-20-2305(b)(1), as amended by Acts 2005, No. 2283, § 2, which provides:
 In addition to state foundation funding aid, each school district shall receive funding for additional education categories as provided in subdivisions (b)(2)-(6) of this section.
Section 6-20-2305(b)(2) of the Code (West Supp. 2005), sets the amount of alternative learning environment funding at $3,250 per student. Implicit in these statutory provisions is a recognition that classifying and funding a student as falling within a special-needs category in no way precludes further including the same student in K-12 average daily membership.
With respect to isolated school funding, A.C.A. § 6-20-2305(c) provides:
 Isolated funding under § 6-20-601, student growth funding, and special education-catastrophic occurrences funding shall be allocated and funded to school districts in a line item appropriation within the Public School Fund pursuant to law or rules promulgated by the State Board of Education.
Implicit in this provision is a recognition that isolated funding is likewise a discrete category of funding that will supplement other available revenue sources. This conclusion is expressly set forth at A.C.A. § 6-20-2305(d), which provides:
 The sum of subsections (a)-(c) of this section shall be the total state aid allocated and funded to school districts pursuant to this section.
Subsection (a) of A.C.A. § 6-20-2305 sets the foundation funding amount at $5,400 multiplied by the average daily membership of the previous school year. As noted above, subsections (b) and (c) authorize funding for alternative learning environment students and isolated school students, respectively. Like foundation funding, these funding amounts are calculated in terms of average daily membership, see A.C.A. §§6-20-2305(b)(2)and 6-20-603. As reflected in A.C.A. § 6-13-1601(4), the term "average daily membership" refers to the number of students served by a particular district or isolated area. In my opinion, although the pertinent statutes do not directly acknowledge as much, in light of the fact that special needs programs such as ALE are sponsored by the public schools, participants in such programs should logically be included in the calculation of average daily membership so long as they are assigned within grades K-12. I consider immaterial to this inquiry the fact that special needs programs might be classified as "nontraditional."
Question 6: For purposes of special needs funding pursuant to Act 1452,are school districts required to show full compliance with the ArkansasStandards of Accreditation (see 6-15-202) as required in 6-20-601(b)(3)?
In my opinion, the answer to this question is "yes."
Section 6-15-202 of the Code (Supp. 2003) provides in pertinent part:
 (a) The State Board of Education is authorized and directed to develop comprehensive regulations, criteria, and standards to be used by the board and the Department of Education in the accreditation of school programs in elementary and secondary public schools in this state.
 (b)(1) All public schools and school districts shall meet the Standards of Accreditation for Arkansas Public Schools which shall be adopted by the state board.
(Emphasis added.) Section 6-20-601 of the Code (Supp. 2003) further provides in pertinent part:
 (b) An isolated school district shall be eligible to receive isolated funding if
* * *
 (3) The district meets the minimum standards for accreditation of public schools prescribed by law and regulation.
(Emphasis added.)
Act 1452 of 2005, which you reference in your request, provides for special-needs funding for isolated schools. Section 1 of Act 1452 directly references the issue of accreditation in the following provision:
 SECTION 1. Arkansas Code Title 6, Chapter 20, Subchapter 6 is amended to add an additional section to read as follows:
 6-20-604. Additional funding.
 (a)(1) The new requirements under the Standards for Accreditation of Arkansas Public Schools adopted by the State Board of Education have disproportionately increased the cost of operations for school districts that contained isolated schools.
I gather from your question that you believe this provision might reflect a legislative intention to relieve financially overburdened isolated schools from the burden of complying with the accreditation requirement. In my opinion, this is clearly not the case. I believe Act 1452 does no more than provide for additional funding to enable isolated schools to continue meeting their accreditation requirements.
I base this opinion on the fact that Act 1452 expressly conditions the receipt of special needs funding upon compliance with the accreditation requirement. Section 1 adds to the Code A.C.A. § 6-20-604(b)(3), which mandates that both during the course of an annexation or consolidation and upon the completion thereof, an isolated school must attest by affidavit, subject to verification by the State Board of Education, that it has met the requirements of A.C.A. § 6-20-601. As noted above, among these requirements is meeting "the minimum standards for accreditation." Accordingly, I believe an isolated school will be eligible to receive special-needs funding only upon a showing of what you term "full compliance with the Arkansas Standards of Accreditation."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JHD/cyh
[1] Act 1397 contained no emergency clause and specified no effective date. Under these circumstances, the legislation will go into effect on August 12, 2005. See Ark. Op. Att'y Gen. No. 2005-110.
[2] In Ark. Op. Att'y Gen. No. 2000-270, in opining that a district board might close a schoolhouse notwithstanding a previous board's pledge not to do so, one of my predecessors summarized the scope of this discretion as follows:
 [E]ach school board is granted express statutory authority to determine the sites for its school buildings. This authority is set forth in A.C.A. § 6-13-620, which states in pertinent part:
 The board of directors of each school district in the state shall be charged with the following powers and perform the following duties:
 (1) Have the care and custody of the schoolhouse, grounds, and other property belonging to the district and shall keep it in good repair and in sanitary and sightly condition;
* * *
 (3) Purchase buildings or rent schoolhouses and sites therefor and sell, rent, or exchange such sites or schoolhouses. Provided that, in the selection of any school site or the erection of any schoolhouse outside of an incorporated town or city that contains two thousand five hundred (2,500) or more inhabitants, the selection or erection shall be approved by the county board of education before the contract for securing the site or contract for building the schoolhouse is made;
* * *
 (13) Do all other things necessary and lawful for the conduct of efficient free public schools in the district.
A.C.A. § 6-13-620.
 The Arkansas courts have long interpreted this statute as allowing school boards wide latitude in governing their districts. See, e.g., Safferstone v. Tucker, 235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); Isgrig v. Srygley, 210 Ark. 580, 197 S.W.2d 39 (1946). See also Springdale Board of Education v. Bowman, 294 Ark. 66, 69, 740 S.W.2d 909, 910
(1987); Leola School District v. McMahan, 289 Ark. 496, 498, 712 S.W.2d 903, 905 (1986). The courts have further held that they will not substitute their judgment for that of a school board with regard to policy matters, unless the school board, in enacting the policy in question, abused its discretion or acted arbitrarily, capriciously, or contrary to law. Id. The court in Leola, supra, explained "arbitrary and capricious" action by a school board as being action that is not supportable" on any rational basis." Leola, 289 Ark. at 498, 712 S.W.2d at 905. It should be noted that the party challenging the school board's policy has the burden of proving the board's abuse of discretion by clear and convincing evidence. Springdale, 294 Ark. at 69, 740 S.W.2d at 910.
[3] Since the enactment of Act 60 of 2003, which mandated the consolidation or annexation of all districts having an average daily membership of fewer than 350 students, this condition no longer applies to any school district. Accordingly, there are no longer any "isolated school districts." There are, however, "isolated school areas" comprised of former "isolated school districts" that have been annexed or consolidated pursuant to Act 60 of 2003. A.C.A. § 6-20-603 (West Supp. 2005). As reflected in the above quoted definition of "isolated school" set forth at A.C.A. § 6-20-602(a), former isolated school districts under the definitions just quoted continue to remain eligible for isolated school funding.
[4] As discussed in the attached Ark. Op. Att'y Gen. No. 2005-115, this rule does not appear to apply if a school reduces its enrollment by a partial closure. In that instance, special needs funding would apparently be based upon current-year enrollment figures. See A.C.A. § 6-20-604(h), enacted pursuant to Act 1452 of 2005 (effective August 12, 2005). I appreciate that this disparate treatment following a partial closure, on the one hand, and an expansion, on the other, may appear unfair. However, I believe current law dictates this result.